UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GILBERTO CANDELA ARELLANES
(A-Number: 205-714-743),

           Petitioner,

     v.

WARDEN OF THE GOLDEN STATE
ANNEX DTENTION FACILITY,

           Respondent.

Case No.  1:26-cv-2210-DAD-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Gilberto Candela Arellanes entered the United States at an unknown time and was detained by ICE in 2026.  Since his detention, petitioner has not been provided a bond hearing, apparently because the government has determined that he is subject to mandatory detention.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

Petitioner entered the United States at an unknown time.[1]  ECF No. 6-1 at 2.  There is no allegation or evidence that, prior to his detention, he had contact with immigration officials.

---

[1] While petitioner told immigration officials that he entered "on or about 2004," he was arrested for driving under the influence in California in 2001.  *See* ECF No. 6-1 at 2; ECF No. 6-2 at 8.  Accordingly, petitioner either entered at an earlier time, or he previously left the United States and re-entered in 2004.

1

There also is no indication that petitioner has applied for asylum.

In July 2024, petitioner was arrested and charged in Utah with assault and domestic violence in the presence of a child.  ECF No. 6-2 at 5.  Those charges remain pending.  In December 2025, petitioner was arrested and charged in Utah with assault and kidnapping.  *Id*. at 6.  Those charges also remain pending.

In February 2026, petitioner was detained by ICE at a courthouse in Utah.  *See* ECF No. 6-1 at 2; ECF No. 6-3 at 1.  There is no indication that petitioner has been provided a bond hearing; on the contrary, respondent asserts that petitioner "is not eligible for a bond hearing." ECF No. 6 at 2.

### Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### Analysis

Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1226(c). Under this section, the attorney general "shall take into custody" any noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another

person."[2]  8 U.S.C. § 1226(c)(1)(E)(ii).  The term "serious bodily injury" has the meaning given such term "in the jurisdiction in which the acts occurred."  *Id*. § 1226(c)(2).  In Utah—where petitioner was arrested and charged—a "serious bodily injury" is a "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death."  Utah Code § 76-1-101.5(17).

Here, respondent argues that petitioner is subject to mandatory detention under section 1226(c)(1)(E) because he has been charged with assault under Utah Code § 76-5-102.  ECF No. 6 at 3.  Notably, respondent does not provide the police report or any other document that details the alleged crime; instead, respondent's argument relies solely on the fact that petitioner has been charged under section 76-5-102.  *See id*.  This section provides in relevant part:

> (2) An actor commits assault if the actor:
>
>> (a) attempts, with unlawful force or violence, to inflict bodily injury on an individual; or
>>
>> (b) commits an act, with unlawful force or violence, that:
>>
>>> (i) causes bodily injury to an individual; or
>>>
>>> (ii) creates a substantial risk of bodily injury to an individual.
>
> (3) (a) A violation of Subsection (2) is a class B misdemeanor.
>
>> (b) Notwithstanding Subsection (3)(a), a violation of Subsection (2) is a class A misdemeanor if:
>>
>>> (i) the actor causes substantial bodily injury to an individual; or
>>>
>>> (ii) the individual is pregnant and the actor has knowledge of the pregnancy.

Utah Code § 76-5-102.

As an initial matter, there is no information in the record indicating whether petitioner is alleged to have attempted to inflict bodily injury, or whether he allegedly committed an act that

---

[2] The statute also requires that the noncitizen be "inadmissible" under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7).  8 U.S.C. § 1226(c)(1)(E)(i).  Because petitioner is "present in the United States without being admitted or paroled," he is "inadmissible" under § 1182(a)(6)(A).  *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3

resulted in bodily injury; either allegation would apparently suffice to charge him under this section.[3]  Moreover, respondent does not identify which subsection would subject petitioner to mandatory detention.  *See* ECF No. 6 at 3 (stating, without explanation, that "[c]ertainly, Utah Code § 76-5-102 makes clear that Petitioner was arrested for is a crime that falls within section 1226(c)(1)(E)(i)-(ii)").

In the absence of information to the contrary, I find that being charged under this section does not subject petitioner to mandatory detention.  This section criminalizes either the attempt to inflict injury or acts that cause "bodily injury" or "substantial bodily injury."[4]  Utah Code § 76-5-102(2), (3).  This section does not, however, criminalize acts that result in a "serious bodily injury."  This omission is critical because Utah law "delineates three tiers of injury in the criminal context: bodily injury being the lowest tier, substantial bodily injury the middle, and serious bodily injury the highest."  *See State v. Lyden*, 2020 UT App 66, ¶ 24.  Accordingly, even if petitioner caused a "bodily injury" or a "substantial body injury," it does not follow that he caused a "serious bodily injury."  On the contrary, because lawmakers chose not to include the highest tier of bodily injury in this section, this charge does not support respondent's argument that petitioner's alleged crime resulted in a "serious bodily injury."  Notably, another section of the Utah Code criminalizes acts resulting in a "serious bodily injury," and charging authorities seemingly chose not to charge petitioner under that section.  *See* Utah Code § 76-5-103(3)(b)(i).

Accordingly, the present record does not establish that petitioner is subject to mandatory detention under section 1226(c).  Because petitioner was detained in the interior of the United States, I find that his detention is governed by 8 U.S.C. § 1226(a).  *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  "Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time

---

[3] While petitioner's rap sheet indicates that he was charged under subsections 2 and 3(a), this information does not reveal whether he allegedly caused any injury.  *See* ECF No. 6-2 at 6.

[4] A "bodily injury" in the meaning of the Utah statute is a "physical pain, illness, or any impairment of physical condition," and a "substantial bodily injury" is a "bodily injury, not amounting to serious bodily injury, that creates or causes protracted physical pain, temporary disfigurement, or temporary loss or impairment of the function of any bodily member or organ."  Utah Code § 76-1-101.5(4), (18).

4

before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). Petitioner, however, has been denied this statutory right.

Given this finding, I must determine whether the appropriate relief is release or a bond hearing. Petitioner requests that he be afforded a bond hearing. ECF No. 1 at 17. Respondent does not address this issue. *See* ECF No. 6.

Courts in this Circuit have ordered both forms of relief. Some courts have found that a bond hearing is the proper remedy. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) ("The Court finds that the specific harm Rodriguez alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a) and enjoining Defendants from denying bond on the basis that he is detained under Section 1225(b)(2)."). Other courts have held that release is the proper remedy. *See Feng v. Lyons*, No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) ("Provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right.").

Here, I find that a bond hearing is proper. The harm suffered by petitioner—not receiving the bond hearing to which he is statutorily entitled—is remedied by providing that hearing. *See Rodriguez*, 779 F. Supp. 3d at 1263. Moreover, *Feng* differs from the instant action. There, the court found "no indication . . . of prima facie evidence that Petitioner could be found to be a risk of flight or a danger to the community." *Feng*, 2026 WL 472635, at *1. The same cannot be said here. As noted, petitioner was arrested four months ago for allegedly assaulting and kidnapping an individual. *See* ECF No. 6-2 at 6. Additionally, petitioner still faces charges for assault and domestic violence in the presence of a child.[5] *See* ECF No. 6-2 at 5.

While this evidence might prove insufficient for the immigration judge to deny bond, it is sufficient to support the finding that "due process is satisfied if Petitioner is provided with a post-deprivation bond hearing." *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL

---

[5] Petitioner's rap sheet shows other arrests that resulted in dismissed charges. *See* ECF No. 6-2 at 5-6, 9.

607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M.*, 2025 WL 2938808, at *15-16).

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted.

Accordingly, it is hereby RECOMMENDED that:

1.  The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2.  Within seven days of this order, petitioner (A-Number: 205-714-743) be afforded a bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

3.  Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4.  The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 27, 2026                                         _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE